# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHANIE FISHER, *et al.*      :      **CIVIL ACTION**
                                     :
                                     :      **NO. 06-3021**

          v.                  :

SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE               :

**FILED**

APR 2 5 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM OPINION

Savage, J.                                   April 25, 2007

Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), the Pennsylvania corporation that manufactures the antidepressant drug Paxil, has moved to transfer this product liability action brought by the plaintiffs Stephanie A. Fisher ("Fisher"), and her parents Mark and Marlene Fisher, New York residents, for injuries Fisher allegedly suffered when she attempted suicide as a result of using the drug in New York. GSK contends that the Western District of New York is the more appropriate forum because the events at issue occurred there where the plaintiffs were residing and a significant number of non-party witnesses and documents are located. Opposing transfer, the plaintiffs argue that this case should remain in this district where GSK is headquartered, innumerable documents related to Paxil are stored, and a multitude of current and former GSK employees work or reside.

After weighing all relevant factors and giving significant consideration to the plaintiffs' preference, the balance tips in favor of transferring the case to the Western District of New York. Therefore, GSK's motion to transfer will be granted.

## Background Facts

The plaintiffs allege that, at the age of seventeen, Fisher attempted suicide as a result of her ingestion of Paxil. The gist of their claims is that despite its specific knowledge of Paxil's association with the increased risk of suicidality in pediatric patients, GSK failed to warn doctors, the medical community and the public of this danger.[1] After her physician prescribed Paxil, Fisher took the drug for approximately two months.[2] During that time, she experienced suicidal thoughts, culminating in an attempted suicide.[3] All of these events took place in New York.[4]

GSK is incorporated in Pennsylvania and maintains its North American headquarters in Philadelphia.[5] Its document depository containing Paxil documents is located in Philadelphia.[6] Numerous GSK employees, including the CEO of GSK, scientists involved in clinical trials for Paxil, its liaison with the FDA regarding Paxil from 1995 to 2003, and others associated with the drug, work and live in or near Philadelphia.[7] As the plaintiffs characterize it, Philadelphia is the "nerve center" for GSK's labeling, promotion and distribution of Paxil.[8]

---

[1] Plaintiffs assert claims of negligence (count I); negligent pharmaco vigilance (count II); strict liability (count III); breach of express warranty (count IV); fraud (count V); and loss of consortium and loss of income (count VI).

[2] *Compl.* ¶ 38.

[3] *Id.*

[4] *Pls.' Br.* at 12; *Compl.* ¶ 38.

[5] *Pls.' Br.*, Exs. A, E.

[6] *Pls.' Br.* at 4, Ex. H at 9.

[7] *Pls.' Br.* at 5-6.

[8] *Id.* at 5.

2

**Legal Standard**

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice.  28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer.  *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying district.  *Jumara*, 55 F.3d at 879-80.  Depending on the nature and facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Despite this wide latitude, a transfer motion is not to be

granted without a careful weighing of factors favoring and disfavoring transfer.  *See Shutte*, 431 F.2d at 24-25.

## Analysis

Only if the action could have been brought in the Western District of New York can it be transferred there.  Thus, the threshold question is whether that district is a proper venue.

What is a proper venue in diversity cases is defined in 28 U.S.C. § 1391, which sets out three bases for venue: (1) where all defendants reside in the same state, the district where any defendant resides; (2) the district where a substantial part of the events or omissions giving rise to the claim occurred; and (3) in the case where there is no other district in which the action can be brought, the district where a defendant is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(a).

GSK is not a New York resident.  However, a substantial part of the events in this case happened in the Western District of New York.  The drug was marketed and prescribed in New York and the injury occurred there.  At the time she took Paxil and attempted suicide, Fisher resided in the Western District of New York.[9]  Therefore, because a substantial part of the events giving rise to the claim occurred in the Western District of New York, the plaintiffs could have brought their claim in that district if they had so chosen.[10]

---

[9] *Pls.' Br.* at 12.

[10] Asserting that the plaintiffs' claim could be brought in the Western District of New York, GSK concedes that it is subject to personal jurisdiction in that district. *Def.'s Br.* at 6.

4

The inquiry now turns to weighing the private and public interest factors to determine which forum is more convenient for the parties and the witnesses, and will serve the interest of justice.

### (1) The plaintiffs' choice of forum

The plaintiffs' choice of forum typically receives "paramount consideration." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). However, the plaintiffs' choice is given less deference where they do not live there and none of the operative facts occurred there. *McMillan v. Weeks Marine, Inc.*, No. 02-CV-6741, 2002 WL 32107617, at *1 (E.D. Pa. Dec. 2, 2002) (Savage, J.).

The plaintiffs have no real connection to this district.  They do not reside in Pennsylvania and several significant facts did not occur here.  On the other hand, they have several connections to the Western District of New York.  Fisher's doctor prescribed the Paxil in the Western District of New York.  Fisher ingested the drug and attempted suicide there.  Fisher and her parents reside there.

The parties do not agree regarding the magnitude and type of decisions regarding Paxil that GSK made in this district.  It is undisputed that at least *some* of those decisions occurred here.[11]  GSK does not deny that decisions regarding Paxil were made in Philadelphia, stating that "most" decisions occurred outside of Pennsylvania.[12] GSK cannot deny that its pediatric clinical trials, which are directly related to the present case, took place in Philadelphia.  Accordingly, a number of operative facts occurred in Pennsylvania.

---

[11] GSK has seven offices in the Philadelphia area.  One of its two operational headquarters is in Philadelphia.

[12] *Def.'s Br.* at 11.

In this case, the plaintiffs' choice of forum need not be given "paramount consideration" because they do not live in this district and have had no contact with this district.  Nevertheless, their choice will still be accorded some deference because some of the operative facts of the case occurred in this district.  Therefore, while not rising to the level of "paramount consideration," the plaintiffs' choice runs slightly in their favor.

### (2) The defendant's preferred forum

GSK prefers the Western District of New York because it can compel the attendance of essential non-party witnesses to testify at a trial there and would not be able to do so if the case were tried in Pennsylvania.[13]  A number of non-party factual witnesses reside in New York.  These witnesses include Fisher's physicians and nurses, family members and friends, each of whom has essential testimony.[14]  Because they are outside the geographic reach of this district's subpoena power, GSK may not have access to these witnesses at trial.  See Fed. R. Civ. P. 45(b)(2).  If the case is transferred, the Western District of New York will have subpoena power over the witnesses who reside within that district.  Id. (providing district court subpoena power over "any place within the district of the court by which it is issued").  Therefore, the defendant's preferred forum weighs in its favor.

### (3) The place where the claim arose

Where the claim arose implicates other factors in the analysis.  It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability

---

[13] Id. at 11-12.

[14] Id. at 16-17.  For example, the testimony of the medical professionals may be pertinent to GSK's learned intermediary defense.  Id. at 16.

of witnesses, and efficiency concerns.   Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

GSK asserts that the claim only arose in New York where the drug was prescribed, purchased and consumed, and where Fisher subsequently attempted suicide.[15]   Any warnings about Paxil were received by Fisher's physician in New York, not Pennsylvania.[16]

Conceding that part of the claim arose in the Western District of New York, the plaintiffs assert that the claim also arose in Pennsylvania.[17]   They point to GSK's decisions relating to the labeling, promotion and distribution of Paxil that were made in the Philadelphia area, at GSK's "nerve center."[18]   These decisions are relevant to the plaintiffs' warning defect claim, particularly if they show how the defendant made many of its decisions concerning the Paxil warnings.[19]   However, GSK counters that the plaintiffs have not demonstrated that GSK's decisions occurred in the Philadelphia area, "given that the design, research, development, marketing, manufacture, and sales of Paxil took place *mostly outside* of Pennsylvania."[20]   Yet, GSK does not deny that other decisions and activities regarding Paxil occurred in this district.

Despite GSK's statement that Paxil does not have a "unique connection to Pennsylvania,"[21] there are numerous links between the drug and GSK's operations in this

---

[15] *Id.* at 12, 14.

[16] *Id.* at 14.

[17] *Pls.' Br.* at 12.

[18] *Id.* at 5, 12.

[19] *Id.* at 12.

[20] *Def.'s Br.* at 11 (emphasis added).

[21] *Id.* at 4.

7

district.   However, even though *some* of the decisions may have taken place in the Philadelphia area, "the most significant contacts and relationship to the liability issue is [the plaintiff's] home state." *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 193 (E.D. Pa. 2007) (Savage, J.).   Therefore, the weight of contacts in this case favors the Western District of New York, which is the plaintiffs' home state and the defendant's preferred forum.

> (4) *The relative ease of access to the sources of proof*

GSK will have greater difficulty than the plaintiffs in accessing sources of proof in New York.   As already discussed, the fact witnesses located in New York may not be compelled to testify at a trial in Pennsylvania.[22]   Additionally, Fisher's medical records and the incident report pertaining to her attempted suicide are located in New York.[23]

Characterizing GSK's argument as speculation, the plaintiffs argue that GSK has not shown that any of the New York witnesses will not be available for trial.[24]  On the other hand, although GSK has not shown that any of the New York witnesses will be unavailable for trial, there is no guarantee that those witnesses will come to Pennsylvania to testify.

The plaintiffs point out that many witnesses, namely GSK employees, reside in the Philadelphia area,[25] and GSK's document depository is located in Philadelphia.[26]   Thus,

---

[22] *See also Def.'s Br.* at 17-18.

[23] *Id.* at 17.

[24] *Pls.' Br.* at 14.

[25] *Id.* at 5-6.

[26] *Id.* at 4, 16.

the plaintiffs assert that the ease of access to sources of proof weighs against transferring the case.

Plaintiffs' concern that GSK may not make its employees available in the Western District of New York is unfounded because GSK's employees are party witnesses who are required to comply with a subpoena regardless of where they reside.  Fed. R. Civ. P. 45(c)(3)(A)(ii).  As to the documents in GSK's depository, they may be authenticated and explained during discovery, much of which has already taken place.  There should be no difficulty in the plaintiffs using those documents at trial.

Although there are some liability witnesses in Pennsylvania, witnesses essential to proving liability and damages are located in New York.  The questions that must be resolved to determine liability are numerous and complex.  They implicate Fisher's psychological and medical histories, her pharmacological regime, the role of her physician and her physical characteristics.  The sources of this essential information are in New York and not in Pennsylvania.  On balance, the sources of proof factor weighs in favor of transfer.

*(5) The convenience of the parties as demonstrated by relative financial status and physical location*

The Western District of New York is more convenient in terms of financial burden and physical location for the plaintiffs.  The plaintiffs will not need to travel if the case is tried in New York because the plaintiffs currently reside there.[27]

Pennsylvania is a more convenient location for GSK's witnesses physically, but GSK's financial status allows it to absorb the cost of traveling to a farther destination more

---

[27] *Def.'s Br.* at 15.

easily than the plaintiffs.  Many of the defendant's employees will need to travel regardless of whether the case is tried in New York or Pennsylvania because the defendant's employees are located throughout the world and may need to travel from some locations other than Pennsylvania.[28]  Therefore, the Western District of New York is more convenient in terms of the physical location for the plaintiffs and not significantly inconvenient for the defendant.

*(6) The availability of compulsory process for the attendance of witnesses*

As discussed in the consideration of the defendant's preferred forum, GSK will likely have more difficulty in compelling the attendance of the non-party witnesses who reside in New York than the plaintiffs will have in compelling  the defendant's employees to appear at trial.  Therefore, the availability of compulsory process for the attendance of witnesses factor weighs in favor of transfer.

*(7) The convenience of the witnesses*

Numerous liability and damages witnesses reside in New York.  These witnesses include Fisher's doctor who prescribed the Paxil, the medical personnel that attended her after she attempted suicide, her family and her friends during the time she was taking Paxil and attempted suicide.[29]  These witnesses will be more inconvenienced by having to travel to Philadelphia as opposed to remaining in New York for a trial.

A number of GSK employee-witnesses will likely need to travel regardless of whether the trial is in this district or in the Western District of New York. While the plaintiffs have identified approximately eleven witnesses from GSK that reside in or around

---

[28] *Id.*

[29] *Id.* at 15-17.

Philadelphia,[30] many other GSK employees reside in the United Kingdom and North Carolina.[31]  For many of these witnesses, Philadelphia will not be any more convenient than New York.

The plaintiffs have identified several third-party witnesses who will testify at trial. These witnesses reside in Connecticut, Maryland, Massachusetts, Texas and Pennsylvania.[32]  For some of these witnesses, Philadelphia will not be any more convenient than New York.

Because many factual witnesses reside in New York and will be less inconvenienced by having the case tried in New York, and other witnesses will likely need to travel regardless of whether the case is tried in this district or in New York, the Western District of New York is a more convenient forum for the witnesses.  Therefore, this factor weighs in favor of transfer.

*(8) The practical problems that make trial of a case expensive and inefficient*

The plaintiffs assert that this case will be more efficiently and inexpensively disposed of in Pennsylvania due to the consolidation of six cases in this district and the fast track on which this court has set the case.[33] The consolidation was solely for discovery and not trial.  Much of the discovery on GSK's knowledge and warnings has already been conducted.  Discovery of liability and damages issues unique to the plaintiffs will take place

---

[30] *Pls.' Br.* at 2.

[31] *Def.'s Br.* at 15.

[32] *Pls.' Br.* at 6-7.

[33] *Id.* at 16-17.

in New York. Thus, there is no decided benefit in terms of efficiency and costs if this case remains in this district.

(9) The "public interest" factors

The parties disagree whether New York or Pennsylvania law will apply to the plaintiffs' claims.[34] GSK asserts that New York law applies because the significant events of this lawsuit took place in New York, and transferring the case will avoid the conflict of law issues present because the New York court will be applying law with which it is familiar.[35] On the contrary, the plaintiffs argue that "Pennsylvania law may apply to many aspects of plaintiffs' claims."[36] They assert that only slight differences exist between the laws of Pennsylvania and New York.[37]

Both New York and Pennsylvania citizens have an interest in this litigation. GSK asserts that New York has a stronger interest because the injuries occurred to a New York citizen.[38] On the other hand, the plaintiffs assert that Pennsylvania's interest is stronger because it does not want to become a "haven for fraudulent corporations."[39]

Applying a choice of laws analysis in deciding that class certification was not appropriate, I determined that the state having the most significant contacts and relationship to the issue of liability is the plaintiff's home state at the time the cause of

---

[34] See Def.'s Br. at 20; Pls.' Br. at 19-20.

[35] Def.'s Br. at 19-20.

[36] Pls.' Br. at 19-20.

[37] The plaintiffs concede that New York recognizes strict liability for failure to warn against drug manufacturers while Pennsylvania does not. Plaintiffs' Motion for Class Certification, App'x I at xix, xxii, filed in Blain v. Smithkline Beecham Corp., Civ. A. No. 06-1247(E.D. Pa.) (Document No. 59).

[38] Def.'s Br. at 20-21.

[39] Pls.' Br. at 18-19.

12

action accrued and concluded that "the foreign state's interest in protecting its citizens outweighs Pennsylvania's regulatory concerns." *Blain*, 240 F.R.D. at 193-94.  Therefore, while both states have an interest in the litigation, New York's interest outweighs Pennsylvania's.

The parties disagree whether the Eastern District of Pennsylvania or the Western District of New York is more congested.  There is no significant difference in the congestion or disposition rate between the two districts.  Therefore, the congestion factor is neutral.

## Conclusion

The private and public interest factors of convenience and fairness weigh in favor of transferring the case to the Western District of New York where this action could have been brought.  Accordingly, in the interest of justice, the motion to transfer venue will be granted and this case will be transferred to the Western District of New York.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE FISHER, *et al.* | : | CIVIL ACTION |
| | : | |
| | : | NO. 06-3021 |
| v. | : | |
| | : | |
| SMITHKLINE BEECHAM  CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | |

**FILED**

APR 2 5 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### ORDER

**AND NOW**, this 25th day of April, 2007, upon consideration of Defendant SmithKline

Beecham Corporation d/b/a GlaxoSmithKline's Motion to Transfer Venue (Document No.

23), and the plaintiffs' response, it is **ORDERED** that the motion to transfer is **GRANTED**

and this matter is **TRANSFERRED** to the Western District of New York.

TIMOTHY J. SAVAGE, J.